UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRYAN RUSSO, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) FILE NO. |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| APARAVI SOFTWARE | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Bryan Russo ("Mr. Russo") brings this Complaint against Defendant Aparavi Software Corporation ("Aparavi").

## INTRODUCTION

1. Mr. Russo began working at Aparavi as a Service Provider Account Executive on November 8, 2021. Except for infrequent travel obligations, Mr. Russo worked remotely from his home in Canton, Georgia.

2. During his employment with Aparavi, Mr. Russo was diagnosed with Stage 4 colon cancer, which constitutes a disability as defined by the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101.

3. Accordingly, Mr. Russo asserts claims against Aparavi for

1

discrimination and failure to accommodate under the ADAAA.

4. Mr. Russo seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement, compensatory damages, liquidated damages, and attorneys' fees and costs of litigation.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

6. This Court has personal jurisdiction over Aparavi pursuant to O.C.G.A. § 9-10-91.

7. Venue is proper in this Court because this action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed. *See* 42 U.S.C. § 12117; 42 U.S.C. § 2000e–5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Mr. Russo satisfied all administrative prerequisites to perfect his claims under the ADAAA. Specifically, Mr. Russo timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a notice of right to sue.

9. Mr. Russo brings this suit within ninety (90) days of receipt of his notice of right to sue.

## THE PARTIES

10. Mr. Russo is a resident of the State of Georgia.

11. Mr. Russo is an individual with a disability within the meaning of the ADAAA, 42 U.S.C. § 12102(1).

12. Mr. Russo is a person with a disability because he had an actual physical impairment, Stage 4 colon cancer, which substantially limited one or more of his major life activities, because he had a record of impairment, and because he was regarded as having an impairment.

13. Defendant Aparavi is a California Stock Corporation that regularly transacts business within the State of Georgia.

14. Defendant Aparavi is a covered employer under the ADAAA, as it employs more than fifteen people.

15. Defendant Aparavi may be served with a summons and copy of the Complaint in this action by delivery of summons and process to its registered agent: Registered Agent Solutions, Inc., 720 14th Street, Sacramento, California, 95814.

## STATEMENT OF FACTS

### Bryan Russo's Employment History

16. Before he joined Aparavi, Mr. Russo had a long track record as a highly successful salesman. He obtained his B.A. in Business Administration and

Management, Information Systems from Kennesaw State University, and had over a decade of experience in technology and software sales.

17. Beginning in 2010, Mr. Russo spent over six years working for IBM, first spending four years as a Z Software Client Leader where he led the presentation and positioning of IBM's products and services in support of territory sales objectives. In that role, Mr. Russo consistently achieved his sales quotas; he earned recognition in 2013 and 2014 for his high sales volume, including the 2014 Sales Eminence Award.

18. In 2014, Mr. Russo moved to a Customer Success position with IBM Security Trusteer, where he built key relationships between clients and IBM to ensure that customers renewed their contracts with IBM for the Trusteer program. Mr. Russo successfully launched and identified new business while securing existing relationships. For example, he closed a $400,000 contract renewal in December 2015.

19. In 2016, Mr. Russo took a Cloud and Service Provider Sales position with Veeam Software, where he was directly responsible for sales and relationship activities such as developing, managing, and growing Veeam's business within both regional and national sales territories. He either achieved or exceeded his sales quota each year at Veeam, earning President's Club honors in 2018, 2019, and 2021.

**Bryan Russo's Employment and Discriminatory Discharge At Aparavi**

20.     Mr. Russo was employed by Aparavi as an Account Executive from on or about November 8, 2021, until his wrongful and discriminatory termination on October 18, 2022.

21.     As an Account Executive, Mr. Russo was focused on selling Aparavi's software product.

22.     Mr. Russo's territory consisted of the entire East Coast, where he represented Aparavi at trade shows or on Zoom meetings.  Like the rest of his team, Mr. Russo mostly worked from home while occasionally traveling to trade shows.

23.     Unfortunately, Aparavi's product was plagued by problems that made it unable to scale as advertised.  Moreover, shortly before he joined Aparavi, the company drastically changed its product.  This forced the sales team to pitch a product that was essentially brand new, which in turn required building credibility with potential customers.  The pricing structure and the product's poor performance made this all but impossible.

24.     The reaction the sales team received was universal: potential customers believed the product was priced too high, was too time-consuming to implement, and that it did not meet their needs.

25. In summary, there was no demand for the product, which did not work properly anyway, so sales representatives, including Mr. Russo, consequently struggled to close deals with new customers.

26. Even though no one on the sales force was able to close deals, in July 2022, Mr. Russo and his team members received a retention bonus between $4,000 and $5,000 as a sign of good faith. Mr. Russo took this as a sign that Aparavi was committed to a long-term relationship. Mr. Russo also received a promotion in August 2022, and was assured that the Company was working to resolve all issues with the product.

27. In early August 2022, Mr. Russo was reassigned to report to Peter Worsnop (Mr. Worsnop), Aparavi's Vice President of Sales, and was also assigned to handle the company's top 200 accounts, along with a wider, national sales territory.

28. On August 19, 2022, Mr. Russo was diagnosed with colon cancer (which he later learned was Stage 4), which would require chemotherapy and possibly surgery.

29. Mr. Russo informed Mr. Worsnop and Aparavi's HR Director Kathy Johnson (Ms. Johnson) of his diagnosis shortly thereafter. Mr. Russo advised them

that he would need six to eight weeks of chemotherapy, and since this treatment would leave him immunocompromised, he would be unable to travel.

30. However, Mr. Russo did not request any time off, instead advising Aparavi that he would be able to continue working—particularly since he already primarily worked from home.

31. As a result of his Stage 4 cancer diagnosis, the only real change in Mr. Russo's job duties was his inability to travel.

32. Mr. Russo did not see his inability to travel while receiving treatment as a serious problem, since he did not have to travel often—perhaps once every six to eight weeks—and since the rest of the sales team would be able to handle these trips, even if he could not attend. On occasion, other employees were unable to attend trips, and Mr. Russo and his fellow employees had been able to accommodate them.

33. When Mr. Russo learned of his diagnosis, he was only scheduled for one trip--a conference in Orlando, Florida in September 2022. Mr. Russo offered to attend, if necessary, but Mr. Worsnop told him not to worry about the trip, telling Mr. Russo, "We'll cover you."

34. Between the reassurances Mr. Russo received from his colleagues, and the low level of disruption his treatment would cause in his duties, Mr. Russo had no reason to believe that his job was in jeopardy.

35. After discussing his diagnosis with Mr. Worsnop, Mr. Russo did not hear from him again about either his illness or his job performance. While the sales team would occasionally receive emails pushing them to close deals—indeed, the entire team had been in a slow period, due to problems with the product—Mr. Russo never received any individual feedback or criticism about his work.

36. Mr. Russo continued working the entire time at the same pace as before his diagnosis, even after beginning chemotherapy on September 15, 2022. Shortly after Mr. Russo had advised Mr. Worsnop and Ms. Johnson of his diagnosis, Ms. Johnson, began canvassing employees about changing the company's healthcare insurance provider from United to another company, with options including Aetna and Blue Cross Blue Shield ("BCBS").

37. Ms. Johnson asked the employees to indicate if any of their doctors were out of network for the potential new health insurance providers. Mr. Russo advised Ms. Johnson that his treating physicians did not accept BCBS. Mr. Russo also contacted Ms. Johnson about what benefits may be available to him during his cancer treatment, such as short-term and long-term disability.

38. Open enrollment for the next year of health insurance coverage was set to begin on October 18, 2022. At 8:30 a.m. that day, Mr. Russo received an invitation for a 10:00 a.m. meeting with Mr. Worsnop and Ms. Johnson. During the meeting,

Mr. Worsnop informed Mr. Russo that due to his "performance," Aparavi was letting him go.

39. While the company claimed the reason was because Mr. Russo had not closed any deals, this reason was false and pretextual; indeed, no one on the sales team had closed a deal and none of the other account executives and/or sales force were terminated at the time Aparavi terminated Mr. Russo.

40. Mr. Russo had only been in his new, national position for a few weeks before Aparavi terminated him.

41. Mr. Russo never received any warnings about his job performance; he had never been placed on a performance improvement plan. In fact, Mr. Russo received a retention bonus, and then his promotion, approximately three months before Aparavi wrongfully terminated him.

42. Aparavi terminated Mr. Russo because of his illness and not because of his abilities or performance. It was only after Mr. Russo revealed his cancer diagnosis that Aparavi decided to terminate him just as open enrollment for the next year of health insurance began.

43. Aparavi did not want to have Mr. Russo on its insurance plan while he was going through cancer treatment; thus, it terminated him the day open enrollment

opened. Aparavi offered him one month of COBRA continuation as severance, a benefit worth $2,755.84, and nothing more.

## COUNT ONE

### DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA– ACTUAL DISABILITY

44. Mr. Russo incorporates by reference paragraphs 1 through 43 of this Complaint.

45. Mr. Russo is a qualified individual with a disability. Mr. Russo's disability substantially limited one or more major life activities.

46. Mr. Russo requested that he be allowed not to travel during his cancer treatment—a reasonable accommodation request arising from his disability, especially since he was required to travel so infrequently.

47. Mr. Russo was able to perform the essential functions of his job.

48. Aparavi intentionally discriminated against Mr. Russo by subjecting him to an adverse employment action, by unlawfully terminating his employment after learning about his cancer diagnosis and immediately before open enrollment began for the Company's healthcare insurance plan.

49. Aparavi's termination of Mr. Russo was an intentional and willful violation of the ADAAA in violation of Mr. Russo's rights thereunder.

50. Mr. Russo is entitled to an award of back pay, front pay, compensatory

damages, attorneys' fees and costs, and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

## COUNT TWO

## DISCRIMINATION IN VIOLATION OF THE ADAAA – REGARDED AS DISABLED

51. Mr. Russo incorporates by reference paragraphs 1 through 43 of this Complaint.

52. Aparavi terminated Mr. Russo because it regarded him as being disabled.

53. Aparavi's termination of Mr. Russo was an intentional and willful violation of the ADAAA in violation of Mr. Russo's rights thereunder.

54. Mr. Russo is entitled to an award of back pay, front pay, compensatory damages, attorneys' fees and costs, and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Russo demands a **TRIAL BY JURY** and that the following relief be granted:

i. That this Court take jurisdiction of this matter;

ii. That process be served on Aparavi;

iii. That Mr. Russo be awarded a declaratory judgment that Aparavi

violated the ADAAA;

 iv. That this Court enter a permanent injunction, prohibiting Aparavi from engaging in unlawful employment practices in violation of the ADAAA;

 v. That the Court award Mr. Russo back pay and all benefits, privileges, and rights previously denied;

 vi. That the Court order that Mr. Russo be reinstated or, in the alternative, be awarded front pay;

 vii. That the Court award Mr. Russo liquidated and compensatory damages in an amount to be determined by the trier of fact;

 viii. That the Court award Mr. Russo his costs in this action and reasonable attorneys' fees;

 ix. That the Court grant to Mr. Russo the right to have a trial by jury on all issues triable to a jury; and

 x. That the Court grant such additional relief as the Court deems proper and just.

 Respectfully submitted this 27th day of November 2023.

          BUCKLEY BALA WILSON MEW LLP

          */s/ Paul Jay Pontrelli*
          Edward D. Buckley
          Georgia Bar No. 092750
          edbuckley@bbwmlaw.com

Paul Jay Pontrelli
Georgia Bar No. 583513
jpontrelli@bbwmlaw.com
Kathleen B. Kacynski
Georgia Bar No. 587883
kkacynski@bbwmlaw.com

600 Peachtree Street NE, Suite 3900
Atlanta, Georgia 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Counsel for Plaintiff*